UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RICHARD J. TOY**                                                     **CIVIL ACTION**

**VERSUS**                                                              **NUMBER: 13-219**

**ROUSES ENTERPRISES, LLC**                          **SECTION: "C" (4)**

## ORDER AND REASONS

Before the Court is defendant's motion for summary judgment. Rec. Doc. 14. Plaintiff opposes. Rec. Doc. 31. Having considered the law, the evidence, and the submissions of the parties, the Court hereby GRANTS defendant's motion for the reasons that follow.

**I. Background**

This matter arises out of the plaintiff's termination by the defendant. Plaintiff, a Chinese-American man, most recently served as the deli counter manager in defendant's Airline Highway location. *See, e.g.*, Rec. Doc. 1, ¶ 2; Rec. Doc. 14-5 at 26. The circumstances leading to plaintiff's termination are the subject of much dispute between the parties. On October 20, 2012, Silvio Medina, a deli clerk under plaintiff's supervision, assisted a deli customer whose order was not ready by substituting food items in smaller packages than the customer had originally ordered. Rec. Doc. 14-5, 67-68; Rec. Doc. 14-11, ¶ 3. Plaintiff contends that Medina improperly gave the customer snack trays for free, to make up for the fact that her order was not ready. Rec. Doc. 14-5 at 70. Medina contends that he simply gave the customer the smaller trays at a price lower than what she would have paid for the completed order. Rec. Doc. 14-11, ¶ 3. In any case, the sides agree that plaintiff approached Medina regarding his actions. Rec. Doc. 14-5 at 68-69;

1

Rec. Doc. 14-11, ¶ 4. There is dispute regarding the tone of plaintiff's voice and whether plaintiff or Medina used profanity during the encounter. Rec. Doc. 14-5 at 71; Rec. Doc. 14-10, ¶¶ 2-3.

According to plaintiff and another employee, plaintiff then turned to walk toward the deli department, followed by Medina. Rec. Doc. 14-5 at 72; Rec. Doc. 14-10, ¶ 5. Plaintiff contends that Medina yelled, used profane language, and got close enough to brush his shoulder and spray him with saliva, before he finally shoved Medina, causing him to fly several feet. Rec. Doc. 14-5 at 72, 83. Medina denies having provoked plaintiff in any way. Rec. Doc. 14-11, ¶¶ 4, 6.

The store director, Chad Morvant, was paged to the front of the store to handle the dispute. Rec. Doc. 14-9, ¶ 11. He arrived at the scene and interviewed both men. *Id.* Plaintiff did not deny shoving Medina but insisted that he had been too close. *Id.* Morvant sent plaintiff home for the rest of the day. *Id.* He also interviewed Bagneris, who corroborated Medina's version of events. *Id.*, ¶ 13; *see also* Rec. Doc. 14-10, ¶ 3. Morvant relayed his findings to his district manager, Clint Adams, and the corporate human resource generalist, who concurred in Morvant's recommendation that plaintiff be discharged. Rec. Doc. 14-9, ¶ 16. Morvant informed plaintiff of his discharge the next time he reported for work. *Id.*, ¶ 17.

Plaintiff filed this action, claiming discriminatory discharge on the basis of national origin on February 5, 2013. Rec. Doc. 1. In defense of its decision to terminate plaintiff, defendant cites its employee policy, which lists "fighting," "threats," and "intimidation" among terminable offenses. Rec. Doc. 14-6 at 5.

**II. Standard of Review**

Summary judgment is proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1996).

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of '[discovery], together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the initial burden is met, the nonmoving party must "designate specific facts showing there is a genuine issue for trial" using evidence cognizable under Rule 56. *Id.* at 324, 106 S. Ct. at 2253. "[U]nsubstantiated assertions" and "conclusory allegations" will not defeat a properly supported motion for summary judgment. *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S. Ct. at 2510.

When reviewing a motion for summary judgment, a court must view the evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001). Summary judgment does not allow a court to resolve credibility issues or weigh evidence. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

**III. Analysis**

Plaintiff claims that the reason given for his termination, i.e., his battery of Silvio

Medina, was a pretext for national origin discrimination on the part of his employer. Rec. Doc. 1.

Absent direct evidence of discrimination, courts apply the *McDonnell Douglas* burden-shifting framework, when analyzing origin discrimination claims under § 1981. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S. Ct. 2363, 2377–78, 105 L. Ed. 2d 132 (1989). Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of discrimination, by showing that: (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside of his protected class. *See, e.g.*, *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). After the *prima facie* case is established, an inference of discrimination arises, and the burden shifts to defendant to produce a race neutral reason for its adverse action. *Id.* If the defendant can point to such a reason for its actions, the burden shifts back to the plaintiff to prove that the reasons offered by the defendant were a pretext for discrimination. *Id.*

Defendant argues that plaintiff cannot satisfy the fourth prong of his *prima facie* case to create a threshold inference of discrimination because he can point to no similarly situated employee. Rec. Doc. 14-4 at 9. In "work rule violation" cases like the present, in which the plaintiff admits to violating the rule in question, the Fifth Circuit has said that the employee must come forward with comparators who were treated differently under circumstances "nearly identical to his." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir 2012), as revised (June 22, 2012)  (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir.1995)) (internal quotation marks omitted). "Nearly identical" circumstances exist when the plaintiff and the putative comparator "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable

4

violation histories." *Id.* (quoting *Lee*, 574 F.3d at 260).

Further, and of particular relevance in this matter,

the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions, because [i]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts* for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Id.* (quoting *Lee*, 574 F.3d at 260) (emphasis and alteration in original). "The relevant perspective is *that of the employer at the time of the adverse employment decision*." *Id.* (quoting *Lee*, 574 F.3d at 261 n. 27) (emphasis added).

In this case, plaintiff has proffered four incidents involving five individuals whom he would offer comparators. For the reasons that follow, the Court finds that none of the incidents identified involve "nearly identical circumstances."

Plaintiff first identifies his former supervisees, Kyle Lewis and "Danny." Rec. Doc. 14-5 at 139-41. However, it is uncontested that the altercation between Kyle and Danny did not involve physical contact between the two. *Id.* at 141. Therefore, neither person can be considered similarly situated.

Plaintiff's second possible comparator incident involved Jasmine Jones and Ryan Reed. This incident took place in the parking lot while Mr. Morvant was not on duty. Rec. Doc. 14-13, ¶ 7. Morvant's then-assistant manager reported the matter to Morvant giving him no indication that the altercation involved physical violence of any sort. Rec. Doc. 14-12, ¶ 9; Rec. Doc. 14-13, ¶ 9. Therefore, neither Jones nor Reed can be considered similarly situated in light of this incident.

The third possible comparator incident involved Keenan Duckworth and the above-

named Jasmine Jones, and also took place while Morvant was not on duty. Rec. Doc. 14-13, ¶¶ 11-12. When the manager on duty, Wade Guidroz, interviewed the employees after learning about the incident, each insisted that the other had caused the dispute by slapping the hand of the first. Rec. Doc. 14-14, ¶ 3. No witness to the incident was identified. *Id.*, ¶ 4. Guidroz did not pursue discipline of either individual for this incident. *Id.*, ¶ 6. He informed Morvant of his findings, who took no additional action. *Id.*, ¶ 7; Rec. Doc. 14-13, ¶ 19. It is undisputed that neither Guidroz nor Morvant had been able to determine whether either person had used violence against the other. This incident does not render Duckworth or Jones a viable comparator to plaintiff.

Plaintiff's fourth and final comparator incident took place shortly after Hurricane Isaac and involved Edwin Rovira and James Gibbons - managers of the dairy and wine and spirits departments, respectively. Rec. Doc. 14-13, ¶ 3; Rec. Doc. 14-15, ¶ 2; Rec. Doc. 14-16, ¶ 2. Rovira and Gibbons were in the back of the store, near the freezer when an argument began. Rec. Doc. 14-15, ¶ 3; Rec. Doc. 14-16, ¶ 3. Rovira recalls that Gibbons taunted him after nearly hitting Rovira with the freezer door. *Id.*, ¶¶ 4-6. Rovira retorted and a shoving match ensued. In Rovira's words, Gibbons shoved first. *Id.*, ¶¶ 7-8. In Gibbons' words, Rovira shoved first. Rec. Doc. 14-15, ¶ 3. According to Gibbons, after the shoving, Rovira attacked him, causing Gibbons to push Rovira to the floor, which brought an end to the incident. *Id.*

It is undisputed that this incident was not initially reported to a manager in full detail and that there were no witnesses to the fight. Rec. Doc. 14-13, ¶ 5; Rec. Doc. 14-15 ¶¶ 4-6; Rec. Doc. 14-16, ¶ 9. Rather, Morvant came to know, through means he does not recall, only that Gibbons and Rovira had had some kind of disagreement. Rec. Doc. 14-13, ¶¶ 4-6. Morvant thereupon warned both men to stop arguing and to avoid one another under threat of termination.

Rec. Doc. 14-13, ¶ 5; Rec. Doc. 14-15, ¶ 5; Rec. Doc. 14-16, ¶ 10. It is further undisputed that Morvant did not come to know that this incident involved physical violence between Gibbons and Rovira until he reviewed Rovira's declaration in connection in this case. Rec. Doc. 48-1, ¶ 7.

Case law recognizes that it is reasonable for management to distinguish both between stale and fresh misconduct, and also between misconduct brought to their attention via employee or patron complaint and misconduct brought to their attention by happenstance. *See, e.g.*, *Yeager v. City Water & Light Plant of Jonesboro, Ark.*, 454 F.3d 932, 934 (8th Cir. 2006) (stale accusations of sexual harassment raised in response to discrimination suit held insufficient to prove that the accused employee was similarly situated); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (accusation of co-worker misconduct held insufficient to prove co-worker was similarly situated where "no one in a supervisory capacity was aware of the [co-worker's] actions."). Morvant's latest declaration leaves no room to dispute that these distinctions were not only justified with respect to Rovira and plaintiff but actually relied upon by management in determining whether and how to respond to both situations. Rec. Doc. 48-1, ¶¶ 9-10. Therefore, the Court finds plaintiff dissimilarly situated from Rovira with respect to the decision to terminate.[1]

Finally, in his opposition to summary judgment, plaintiff argues that Morvant's disparate investigation into his incident and the incident involving Gibbons and Rovira should suffice to show a *prima facie* case of national origin discrimination. Rec. Doc. 31 at 2. However, the summary judgment record does not support that either Gibbons or Rovira is similarly situated to plaintiff in terms of management's prerogative to investigate misconduct. Management's claim

---

[1] Because Gibbons left his position with Rouse's before his admitted misconduct was discovered, he cannot be deemed similarly situated for these purposes. Rec. Doc. 48-1 at 7.

that it initially had no indication that any violence took place between the two men is undisputed. Further, just as management may excuse stale misconduct, they may choose not to investigate stale allegations of misconduct.

Because the plaintiff cannot demonstrate that he was treated less favorably than similarly situated employees outside of his protected class, he cannot make out a *prima facie* case of national origin discrimination. Therefore, defendant is entitled to summary judgment in this matter.

Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is GRANTED. Rec. Doc. 14.

IT IS FURTHER ORDERED that judgment be entered in favor of defendant and against plaintiff dismissing the case with prejudice.

New Orleans, Louisiana, this 18th day of February, 2014,

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE